BERTIE BROOKS, ALIAS BERTIE BURKS, ALIAS BERTIE JAMES v. THE STATE.

No. 13445. Delivered June 11, 1930.
Reported in 29 S. W. (2d) 373.

The opinion states the case.

*Levens, McWhorter & Howard,* of Lubbock, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—Offense, the unlawful sale of intoxicating liquor; penalty, one year in the penitentiary.

Witness Wofford testified to a sale of whiskey at the home of appellant, apparently made to him by a man in the presence of appellant. Two young ladies were in the car with him and as they drove away Officer Conley stopped them and Wofford broke the whiskey. Thereafter he was sent back after more whiskey, the money being furnished by the officers. He testified that it was nighttime, that appellant and another woman came down the street, crossed over opposite the car, handed him a pint, for which he gave appellant $2.50. Conley with the two young ladies sat not far away in a car and he testified: "Mr. Wofford bought a pint of whiskey from her. I could see him get it from her. I was close enough to see the transaction." Wofford further testified that he had never seen this defendant before the time that he purchased the liquor. He further testified: "I have seen her since then right here in the

court room yesterday and to-day. I recognized her when I saw her. Someone told me she was the defendant. Conley told me that she was the defendant but I knew it before."

The claim was made during the trial that appellant was unaware of the presence of the two young ladies, Vera Bessant and Irene Anderson, with Officer Conley at the time the whiskey was alleged to have been sold by appellant. By Bill of Exception No. 1 it appears that Wofford had testified that he did not know the names and identity of the ladies in the car with Conley and that Conley had testified that he had neither seen nor talked to the two young ladies for a period of seven or eight months and had made every effort to locate them; that the State had issued subpoenas for them; that one of the girls had been out of town for several months and the other is supposed "to live at Abilene." At the close of their testimony the appellant caused a subpoena to be issued for these two young ladies and placed same in the hands of an officer and requested the Court in open court to allow the defendant a reasonable time to cause the Constable to go to the high school building in Lubbock, the place of the trial, where said witnesses attended and to their homes and serve said subpoenas and bring them into court, which request was denied. It further appears that a brother of Vera Bessant testified in support of this motion that his sister told him the night before the trial that officer Conley told her to stay away from home the day of the trial so that a subpoena could not be served upon her. Appellant then asked the Court to grant a postponement until nine o'clock for the purpose of obtaining the presence of the said witnesses, which was also denied, and appellant forced to proceed with the trial.

It appears by Bill of Exception No. 2 that after appellant's conviction motion for new trial was filed alleging the discovery of new testimony material to the defendant since her trial, to-wit, the testimony of the two young ladies, Vera Bessant and Irene Anderson. To this motion is appended the affidavits of the two young ladies, as well as the attorney for appellant. Each of these young ladies made oath that they were with Wofford and Conley, as testified to by them, but their testimony differs very materially from these two State's witnesses. The following are some of the statements taken literally from their respective affidavits:

Miss Anderson:

"It was so dark that we could not see anything except the bulk of two women. Mr. Wofford got back to the car and Mr. Conley

asked him who the women were and Mr. Wofford said that he did not know. If there was any transaction between these two women and Mr. Wofford I could not see it, as they were only walking down the street together. Mr. Conley was with me during that time and was not in a position to have seen any sort of transaction and was not in a position to have seen either of the women pass anything into the hands of Mr. Wofford."

Miss Bessant:

"It was so dark that we could not see anything except the bulk of two women. If there was any transaction between these two women and Mr. Wofford I could not see it, as they were only walking down the street together and finally passed out of our view. Mr. Conley was with me during that time and was not in a position to have seen any sort of transaction and was not in a position to have seen either of the women pass anything into the hands of Mr. Wofford."

The affidavits of these witnesses further show that they had never told the appellant anything about what they knew concerning this case prior to the trial. The affidavit of Irene Anderson further contains the following:

"On the day that Bertie Brooks was tried in the District Court of this county for this offense * * * I was at the Lubbock High School in Lubbock; during the afternoon I heard that they wanted me and I went to the court house and got there just as Mr. Bradley was speaking to the Jury; I didn't advise anyone of my presence."

We take the following quotation from the affidavit of Vera Bessant:

"Mr. Conley talked to me about being a witness in the case and I told him that it was impossible for me to identify the woman as it was too dark. * * * He asked me if I wanted to be a witness in the case and I told him that I did not. * * * He promised to try to keep me from having to appear before the grand jury and in the Courts."

The affidavit of appellant's attorney is attached to said motion showing in substance that he learned for the first time when Conley was testifying as a witness the names of the two young ladies and that they were present during the alleged transaction relied upon by the State for a conviction; that he had before the trial gone to the witness Wofford, who refused to answer any questions; that he then went to the witness Conley who advised him that there were some girls in the bunch but that he did not know their names nor where they could be found; that he then went to the District Attorney and

made the same inquiry of him and who told him that if there were, any other witnesses present he did not know it; that he looked on the back of the indictment and there appeared only the names of Wofford and Conley as witnesses.

All these matters appear in the record undenied and unchallenged. The affidavits were undoubtedly presented under circumstances which made their denial an easy matter for the State if they were untrue. Their effect is to show not only that appellant and her attorney did not know of this testimony but that facts have been suppressed, either from a desire to shield the young ladies or to secure the conviction of appellant. These bills are presumed to speak the truth and if they do, they evidence a situation which to put it mildly could not be said to comport with fair dealing, and which may have led to the conviction of appellant.

The record in this case is almost conclusive that a sale of whiskey was made by somebody. It was the theory of appellant that another committed this offense and that she was not present when same was committed, and that it was a case of mistaken identity. We regard the testimony of these young ladies as more than impeaching, since it tends to prove the defensive issues and it therefore does not come within the rule laid down in many cases that the action of the trial court in refusing a new trial sought to obtain purely impeaching testimony will not be revised on appeal. See Jackson v. State, 18 Tex. Crim. Rep. 586; Cockrell v. State, 60 Tex. Crim. Rep. 124. See also recent case of Howle v. State, 26 S. W. (2nd) 651, and authorities there collated.

Because of the error of the trial court in refusing appellant a new trial, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.